UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

PAUL FERRARI                          CIVIL ACTION NO. 08-0719

VS.                                            JUDGE DOHERTY

MICHAEL J. ASTRUE, COMMISSIONER      MAGISTRATE JUDGE METHVIN
  SOCIAL SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

### Background and Commissioner's Findings

Paul Ferrari was born on April 23, 1968, and was 39 years old at the date of the hearing before the Administrative Law Judge (ALJ) on July 10, 2007. (Tr. 451). Ferrari worked in the past as a heavy equipment operator, a metal fabricator supervisor, and a dock supervisor. Ferrari filed applications for disability insurance benefits and supplemental security income benefits on April 13, 2005, alleging disability beginning March 10, 2001, due to a back injury, problems with his legs, and depression. (Tr. 56). The ALJ issued a decision finding Ferrari not disabled and denying benefits on October 26, 2007. (Tr. 24).

The ALJ found at the second step of sequential disability analysis the following severe impairments: degenerative disc disease of the lumbar spine, history of substance abuse, depression, and personality disorder. (Tr. 16). At the third step, the ALJ found Ferrari's

impairments did not meet or equal in severity any of the listed impairments.[1]  The ALJ assigned a residual functional capacity to Ferrari as follows:

> After careful consideration of the entire record, the undersigned find that the claimant has the residual functional capacity to lift and/or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk for two hours in an eight hour workday, but not continuously; and sit for six hours in an eight-hour workday with frequent postural changes.  The claimant is limited in his ability to push/pull in the lower extremities.  He cannot climb ropes, ladders or scaffolds, kneel, crawl or crouch.  He can occasionally stoop, and frequently balance.  The claimant cannot work around hazards.  He is limited to occasional interaction with others.  He is able to maintain attention and concentration for two hour periods and maintain pace over a forty hour week. (Tr. 18).

At the fourth step, the ALJ found Ferrari could not perform his past relevant work, all of which was at the medium to heavy exertional level. (Tr. 22).  At the fifth step, the ALJ sought testimony from a vocational expert (VE).  The VE testified Ferrari could perform the representative occupation of assembler. (Tr. 23).  Based on the testimony of the VE, and "considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ found Ferrari not disabled. (Tr. 22, 23).  This appeal followed.

### *Assignment of Errors*

Ferrari alleges the following errors:

I.  The ALJ erred in failing to find claimant's impairments met Listing 1.04, or at least erred in failing to call a medical expert to testify regarding medical equivalence to Listing 1.04;

II. The ALJ erred in relying upon the testimony of the vocational expert at step five.

---

[1] Specifically, the ALJ found claimant's impairments did not meet or equal listings 12.04, 12.08 or 12.09.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir.1991) (summarizing 20 C.F.R. §404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

*Discussion*

**I.** **Listing 1.04**

To obtain a disability determination at step three of the sequential analysis, an applicant must show that his impairment or combination of impairments meets or equals a Listing. Title 20 C.F.R. §404.1520(d); Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999). "For a claimant to

show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

Listing 1.04 reads in pertinent part as follows:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

* * *

Claimant argues the medical records show he met Listing 1.04, because in "March, 2001, Mr. Ferrari was found to have a large herniated disc that was causing "direct neural impingement" (Tr. 208).[2] Ferrari's application for disability benefits alleges an onset date of March 10, 2001, the time of the diagnosis of the disc hernia, and the records show he had surgery, a right L5 microscopic discectomy, to correct same on February 8, 2002. (Tr. 131). Therefore, after February 8, 2002, claimant did not have a herniated disc.

Plaintiff points to evidence in the record which indicates degenerative disc disease and evidence of nerve root compression in the form of neuro-anatomic distribution of pain and limitation of motion of the spine, accompanied by sensory or reflex loss.[3] However, as argued by

---

[2] "Plaintiff's Brief in Support of Judicial Review," (rec. doc. 8), p. 6, emphasis omitted.

[3] "Plaintiff's Brief in Support of Judicial Review," (rec. doc. 8), referencing Tr. 269, 266-267, 263, 257-259, 255, 345-347, 361-362, 369-371.

the Commissioner, in order to meet the 1.02 Listing, evidence must demonstrate that Plaintiff's impairments "meet *all* of the specified medical criteria." Sullivan, 493 U .S. at 530.

The medical records do not show consistent positive straight-leg testing results post-surgery (Tr. 255, 264, 370), and plaintiff has pointed to no record evidence of motor loss shown by atrophy with associated muscle weakness or muscle weakness. An independent review of the record by the undersigned shows no evidence of same, either.

Furthermore, while claimant points to many instances in the record where various of the criteria of Listing 1.04 were met, especially degenerative disc disease and evidence of nerve root compression, there is also much evidence in the record that contradicts or minimizes these findings. For example, on October 11, 2002, Dr. Steck, Ferrari's treating neurosurgeon, wrote as follows:

> Mr. Ferrari returns. He has undergone the EMG by Dr. Fiore and I have discussed it with Dr. Fiore. Dr. Fiore raises the question of neuropathy but the test was inconclusive. The patient continues to complain of paresthesias in both lower extremities.
>
> I have documented no evidence of persistent neural compression. We have documented spinal stability. I have nothing more to offer him. We have helped him with the radiculopathy but he still has some symptoms. I am recommending he see a psychologist to deal with these symptoms, and return to see Dr. Fiore for further clarification of whether or not he has neural dsyfunction and possible treatment of this.

On December 5, 2002, Dr. Steck wrote as follows:

> Mr. Ferrari returns. I have once again gone over with him that I have nothing more to offer him. He has a chronic pain syndrome not explained by imaging or exam. On exam today, he has a negative straight leg raise. Reflexes are depressed throughout. Normal strength. Negative back exam.
>
> I am going to discharge him. I have told him I will not write for narcotic medications for him. (Tr. 255).

Therefore, the undersigned concludes that substantial evidence supports the ALJ's determination that claimant's impairments or combination of impairments did not meet Listing 1.04.

Ferrari next argues that the ALJ should have called a medical expert to review the medical evidence to determine whether claimant's back impairment and radicular symptoms were the medical equivalent to Listing 1.04. Generally, the decision to consult a medical expert or advisor is a discretionary one. *See* Haywood v. Sullivan, 888 F.2d 1463, 1467-68 (5th Cir.1989). The ALJ may ask for and consider opinions from medical experts on the nature and severity of an impairment or its equivalence to any listed impairment if the ALJ feels it is necessary, but the final responsibility for deciding whether an impairment meets or equals a listed impairment is reserved to the Commissioner. Id. at 1468. See generally 20 C.F.R. §§ 416.926(e).

> Furthermore, Social Security Ruling 96-6p, provides in pertinent part as follows:
>
> . . . [L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.
>
> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. . . .
>
> When an administrative law judge. . . finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record *may be satisfied by any of the foregoing documents* . . . . (Emphasis added).

In this case, the ALJ had a Disability Determination and Transmittal Form in the record. (Tr. 43). SSR 96-6p further provides that an ALJ must obtain an updated medical opinion from a medical expert when *in the opinion of the ALJ* the symptoms, signs and laboratory findings suggest a judgment of equivalence may be reasonable, or when additional medical evidence is received that *in the opinion of the ALJ*, may change the State agency consultant's finding that the impairment is not equal in severity to a listed impairment. (Emphasis added).

Ferrari cites DDS medical examiner Dr. Holmes' report that claimant may "possibly [have] developed or developing complex regional pain syndrome of the lower extremities." (Tr. 371). However, claimant omits from his argument the fact that Dr. Holmes' possible diagnosis was based on "patient's complaint" and her notation that "[t]here were no signs of active radiculopathy on today's examination. . . ." (Tr. 371).

The decision to call a medical expert is within the discretion of the ALJ. In this case, there is substantial evidence to support the ALJ's decision not to seek medical expert testimony or an updated medical opinion regarding the medical equivalency of claimant's impairments, and this assignment of error is without merit.

## II.   *Reliance on the Vocational Expert at Step Five.*

Ferrari argues the VE failed to distinguish between skilled and unskilled assembly jobs in his vocational analysis, and because the VE noted claimant's past work was "very specialized" to the industry in which he worked, "it stands to reason that Mr. Ferrari would then be limited to only 'unskilled' assembly jobs."[4]

---

[4] "Plaintiff's Brief in Support of Judicial Review," (rec. doc. 8), p. 8, referencing Tr. 502, 503.

However, the ALJ did not limit Ferrari to unskilled positions in his residual functional capacity assessment. Claimant makes no argument that his residual functional capacity should have been limited to unskilled positions, except the indirect argument that his former employment was "very specialized." Claimant has offered no authority in support of his assertion that because former employed was "specialized," future employment must necessarily be limited to unskilled positions.

The ALJ properly incorporated into her hypothetical to the VE all of the claimant's impairments supported by the evidence and recognized by the ALJ, and the ALJ did not err in relying upon the VE's testimony at the fifth step of the sequential analysis. Therefore, this assignment of error is also without merit.

*Conclusion and Recommendation*

For all the reasons given above, the undersigned concludes that the ALJ's decision that Ferrari was not disabled, as defined in the Social Security Act, from March 10, 2001, through the date of her decision, was made by application of the correct legal standards and was supported by substantial evidence.

Accordingly, it is **RECOMMENDED** that the Commissioner's decision denying benefits be **AFFIRMED** and the case be **DISMISSED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(c) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on August 31, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)