RECEIVED
SEP 2 1 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| PAUL FERRARI | CIVIL ACTION NO. 08-0719 |
| VERSUS | JUDGE DOHERTY |
| MICHAEL J. ASTRUE, COMMISSIONER OF SSA | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before this Court is a Report and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the Commissioner's decision in this social security matter, denying benefits, be affirmed and the case dismissed. [Doc. 10] Claimant Paul Ferrari filed an objection to Magistrate Judge Methvin's Report [Doc. 11], wherein the claimant argues the magistrate judge (1) erred in failing to find his impairments meets Listing 1.04, or at least erred in failing to call a medical expert to testify regarding medical equivalence to Listing 1.04, and (2) erred in relying on the testimony of the vocational expert ("VE") at Step 5. Finding the magistrate judge reached the proper conclusion, this Court OVERRULES Mr. Ferrari's objections and AFFIRMS the decision of the magistrate judge. Therefore, the Commissioner's decision in this social security matter, denying benefits, is AFFIRMED.

### I. Factual and Procedural Background

As set forth in the magistrate judge's Report and Recommendation, Mr. Ferrari, who was 39 years old at the date of the hearing before the Administrative Law Judge ("ALJ") on July 10, 2007, seeks disability insurance benefits and supplemental security income benefits on grounds he is disabled under Listing 1.04 due to a back injury, problems with his legs, and depression. The ALJ

issued a decision finding Ferrari not disabled and denying benefits on October 26, 2007.

The ALJ found at the second step of sequential disability analysis the following severe impairments: degenerative disc disease of the lumbar spine, history of substance abuse, depression, and personality disorder. At the third step, the ALJ found the claimant's impairments do not meet or equal in severity any of the listed impairments. The ALJ assigned a residual functional capacity to the claimant as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk for two hours in an eight hour workday, but not continuously; and sit for six hours in an eighthour workday with frequent postural changes. The claimant is limited in his ability to push/pull in the lower extremities. He cannot climb ropes, ladders or scaffolds, kneel, crawl or crouch. He can occasionally stoop, and frequently balance. The claimant cannot work around hazards. He is limited to occasional interaction with others. He is able to maintain attention and concentration for two hour periods and maintain pace over a forty hour week.

At the fourth step, the ALJ found the claimant could not perform his past relevant work, all of which was at the medium to heavy exertional level. At the fifth step, the ALJ sought testimony from a vocational expert (VE). The VE testified claimant could perform the representative occupation of assembler. (Tr. 23). Based on the testimony of the VE, and "considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ found the claimant not disabled. (Tr. 22, 23). This appeal followed.

On appeal, the claimant alleges the ALJ erred in failing to find his impairments met Listing 1.04, or at least erred in failing to call a medical expert to testify regarding medical equivalence to Listing 1.04, and that the ALJ erred in relying upon the testimony of the vocational expert at Step

2

five of the sequential evaluation.

## II. Standard of Review

This Court notes the standard of review under 42 U.S.C. §405(g) is restricted to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. *Carey v. Apfel*, 230 F.3d 131, 136 (5th Cir. 2000); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5 Cir.1992); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Carey*, 230 F.3d at 136; *Anthony*, 954 F.2d at 292; *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). Significantly, this Court *may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion*. *Carey*, 230 F.3d at 136; *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir.1988). Thus, *a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson*, 864 F.2d at 343.

## III. The Magistrate Judge's Report and Recommendation

### 1. Listing 1.04

The claimant alleges the ALJ erred in failing to find his impairments meet Listing 1.04.

Listing 1.04 states in pertinent part:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle

3

weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

[. . .]

The claimant argues the medical records show he met Listing 1.04 during the relevant time period, because in "March, 2001, [he] was found to have a large herniated disc that was causing "direct neural impingement" (Tr. 208). The magistrate judge noted, however, that claimant had a right L5 microscopic discectomy on February 8, 2002, and that after this surgery, the claimant did not have a herniated disc. Additionally, despite the plaintiff's argument that he presented evidence indicating degenerative disc disease, nerve root compression in the form of neuro-anatomic distribution of pain, limitation of motion of the spine, and sensory or reflex loss, the magistrate judge pointed out that in order to satisfy Listing 1.04, *all* of the specific medical criteria noted in the listing must be met, and plaintiff has not submitted evidence consistent with positive straight-leg testimony results post-surgery, nor had claimant presented evidence of motor loss shown by atrophy with associated muscle weakness. The magistrate judge noted her own independent review of the record uncovered no evidence of same.

In his Objections to this Court, the claimant contends the magistrate judge erred in concluding Listing 1.04 requires that a herniated disc last for any specified length of time and further contends the magistrate judge erroneously required "consistent positive straight-leg testing results post-surgery." Claimant argues "Section 1.00(D)"[1] states only that, "[b]ecause abnormal physical

---

[1] The claimant failed to provide a proper citation to "Section 1.00(D)" in either his original appellate brief or his Objections, therefore, this Court was unable to independently review the language or content of this provision and its potential application to the facts of this case. For this reason, in part, the claimant fails to carry his burden on this alleged error.

4

findings may be *intermittent*, their presence over a period of time must be established by a record of ongoing management and evaluation." Additionally, the claimant points to the fact that in October 2002, he underwent an EMG which was "most consistent with chronic right L5 or S1 radiculopathy and possible chronic left L5 and or S1 radiculopathies" with the L5 and S1 innervated muscles" demonstrating "chronic changes more significantly in the right leg than the left." Based on the foregoing, claimant contends he satisfies Listing 1.04.

This Court finds the arguments of the claimant unpersuasive. Indeed, claimant's attempts to maximize the impact of certain evidence while minimizing the effects of other evidence are unavailing. First, although the claimant contends the magistrate judge erroneously required "consistent positive straight-leg testing results post-surgery," arguing the Regulations permit evidence of "intermittent" abnormal findings, this Court notes it has been unable to locate the referred-to regulation, which appears to state a general proposition that abnormal physical findings may be intermittent, so long as there is a documented record of treatment over a period of time. Here, however, there is a specific Listing under which benefits are sought, which **requires** "*positive straight-leg raising test (sitting and supine)*," "*if there is involvement of the lower back*." As the claimant seeks benefits due to impairment resulting from a lower back injury, the magistrate judge correctly found the claimant was required to present evidence of positive straight leg tests. The magistrate judge noted the medical records do not show consistent positive straight-leg raising testing results post-surgery, a finding the claimant does not appear to dispute.

Second, although the referenced regulation – which, again, this Court has been unable to locate – states abnormal physical findings may be intermittent, the cited regulation also states the presence of such abnormal findings "must be established by a record of ongoing treatment

5

and evaluation." As the magistrate judge pointed out in her Report and Recommendation, there is much evidence in the record that contradicts or minimizes the plaintiff's allegations that degenerative disc disease, pain, and limitation of motion. For example, the magistrate judge cited the treatment notes of claimant's own treating physician, Dr. Steck, who wrote on October 11, 2002:

> Mr. Ferrari returns. He has undergone the EMG by Dr. Fiore and I have discussed it with Dr. Fiore. *Dr. Fiore raises the question of neuropathy but the test was inconclusive.* The patient continues to complain of paresthesias in both lower extremities.
>
> *I have documented no evidence of persistent neural compression. We have documented spinal stability. I have nothing more to offer him.* We have helped him with the radiculopathy but he still has some symptoms. I am recommending he see a psychologist to deal with these symptoms, and return to see Dr. Fiore for further clarification of whether or not he has neural dsyfunction and possible treatment of this.

(emphasis added).

The foregoing treatment notes are particularly revealing, as they no doubt refer to and are the treatment notes that were contemporaneously recorded at the time claimant was sent for his October 2002 EMG, as noted in claimant's Objections. Although the claimant characterized these EMG results in such as a manner as to *support* an award of benefits, Dr. Steck reported the results of the EMG were "inconclusive." Further, Dr. Steck states he has "nothing more to offer" the claimant and recommends that the claimant "see a psychologist to deal with these symptoms."

The magistrate judge further cited to treatment notes of Dr. Steck dated December 5, 2002, which show the general physical condition of the claimant had not changed as of that date, as follows:

> Mr. Ferrari returns. *I have once again gone over with him that I have nothing more to offer him. He has a chronic pain syndrome not explained by imaging or exam. On exam today, he has a negative straight leg raise. Reflexes are depressed*

6

*throughout. Normal strength. Negative back exam. I am going to discharge him. I have told him I will not write for narcotic medications for him.*

(emphasis added).

Listing 1.04 requires a showing of a disorder of the spine, such as degenerative disc disease, resulting in compromise of a nerve root or the spinal cord, **along with** evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, *if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)*. Based, in part, on the evidence noted herein, the magistrate judge concluded there is substantial evidence in the record that the claimant does not satisfy all of the requirements of Listing 1.04.

This Court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. *Carey*, 230 F.3d at 136; *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir.1988). Thus, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson*, 864 F.2d at 343.

After consideration of the evidence and the Objections filed by the claimant, this Court cannot conclude there is no credible evidentiary choices or medical findings that exist to support the decision of the ALJ that the claimant does not satisfy Listing 1.04. Therefore, the decision of the ALJ is AFFIRMED on this point.

2.  **Medical Expert**

The claimant contends the ALJ should have called a medical expert to review the medical

evidence to determine whether claimant's back impairment and radicular symptoms were the medical equivalent to Listing 1.04. Generally, the ALJ's decision to consult a medical expert or advisor is a discretionary one. *See Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir.1989). As the magistrate judge noted in her Report and Recommendation, the ALJ may ask for and consider opinions from medical experts on the nature and severity of an impairment or its equivalence to any listed impairment if the ALJ feels it is necessary, but the final responsibility for deciding whether an impairment meets or equals a listed impairment is reserved to the Commissioner. *Id.* at 1468. *See generally* 20 C.F.R. §416.926(e).[2] Additionally, in her Report and Recommendation, the magistrate judge cites Social Security Ruling 96-6p, which states:

> ... [L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

---

[2] 20 C.F.R. §416.926(e) states:

> (e) Responsibility for determining medical equivalence. In cases where the State agency or other designee of the Commissioner makes the initial or reconsideration disability determination, a State agency medical or psychological consultant or other designee of the Commissioner (see §416.1016 of this part) has the overall responsibility for determining medical equivalence. In claims adjudicated at the initial level under the procedures in part 405 of this chapter, the medical or psychological expert (as defined in § 405.5 of this chapter) has the overall responsibility for determining medical equivalence. For cases in the disability hearing process or otherwise decided by a disability hearing officer, the responsibility for determining medical equivalence rests with either the disability hearing officer or, if the disability hearing officer's reconsideration determination is changed under §416.1418 of this part, with the Associate Commissioner for Disability Programs or his or her delegate. *For cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council.* In claims adjudicated at the Federal reviewing official, administrative law judge, and the Decision Review Board levels under the procedures in part 405 of this chapter, the responsibility for deciding medical equivalence rests with the Federal reviewing official, administrative law judge, or Decision Review Board.

20 C.F.R. §416.926(e) (emphasis added).

> *The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. . . .*
>
> *When an administrative law judge . . . finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents . . . .*

(emphasis added).

As the magistrate judge points out, in this case, the ALJ had a Disability Determination and Transmittal Form in the record. SSR 96-6p further provides an ALJ must obtain an updated medical opinion from a medical expert only when *in the opinion of the ALJ* the symptoms, signs and laboratory findings suggest a judgment of equivalence may be reasonable, or when additional medical evidence is received that *in the opinion of the ALJ*, may change the State agency consultant's finding that the impairment is not equal in severity to a listed impairment (emphasis added).

The basis for the claimant's alleged error is the report of Dr. Tosheiba Holmes, a DDS medical examiner. Dr. Holmes examined the claimant in July 2005 and reported the claimant "possibly [has developed] complex regional pain syndrome of the lower extremities." (Tr. 371). The claimant relies on the foregoing statement, as well as Dr. Holmes's notations that claimant had antalgic gait, decreased sensation to light touch in the bilateral lower extremities, and decreased deep tendon reflexes in the bilateral lower extremities. The claimant also points out Dr. Holmes noted her has "positive discoloration of the bilateral lower extremities with signs of blanchable erythema significant for increased blood flow from the midfoot to distal toes bilaterally." However, as the magistrate judge noted, claimant omits from his argument the fact that Dr. Holmes' possible

diagnosis was based on "patient's complaint" and her notation that "[t]here were no signs of active radiculopathy on today's examination. . . ." (Tr. 371). This Court also notes Dr. Holmes reported "[t]he patient [had] . . . negative straight leg raises in the supine and sitting position bilaterally," and "[n]o atropy was noted." (Tr. 370).

After considering the evidence in the record, and noting the decision to call a medical expert is within the discretion of the ALJ, the magistrate judge concluded there is substantial evidence to support the ALJ's decision not to seek medical expert testimony or an updated medical opinion regarding the medical equivalency of claimant's impairments. The claimant argues the ALJ *should* have obtained an updated medical expert's opinion with regard to the question of equivalency, but acknowledges the decision to do so is discretionary. Although claimant contends calling a medical expert was "justified" in this case based on the evidence, this Court concludes there is substantial medical evidence that supports the ALJ's decision not to call a medical expert. Therefore, the Court concludes the ALJ did not err in failing to obtain an updated medical expert's opinion with regard to the question of equivalency, and the claimant's objection on this point is OVERRULED.

3. **Reliance on Vocational Expert at Step 5**

The claimant argues the VE failed to distinguish between skilled and unskilled assembly jobs in his vocational analysis, and because the VE noted claimant's past work was "very specialized" to the industry in which he worked, "it stands to reason that Mr. Ferrari would then be limited to only 'unskilled' assembly jobs."[3] The claimant further contends it is "reasonable to deduce" claimant was limited to only unskilled sedentary jobs because Dr. David Greenway, a consulting psychologist, opined the claimant "*should* be able to maintain attention to perform simple repetitive tasks, and he

---

[3] See "Plaintiff's Brief in Support of Judicial Review," (Doc 8), p. 8, referencing Tr. 502, 503.

*should* be able to relate to others regarding simple work-related matters."

This Court has reviewed the colloquy between the ALJ and the VE at the claimant's administrative hearing and concludes the ALJ did not limit the claimant to unskilled positions in his residual functional capacity assessment. Rather, the ALJ properly incorporated into her hypotheticals to the VE all of the claimant's impairments that she believed were supported by the evidence in the record. Based on those hypotheticals, the VE concluded there are a number of sedentary assembly jobs that claimant can perform, 258,240 of which exist in the national economy, and 1,380 of which exist in Louisiana.

With respect to the claimant's argument that the report of Dr. Greenway supports the suggestion that claimant is limited to unskilled jobs only, this Court notes it has independently reviewed the entirety of Dr. Greenway's report, which states in relevant part:

> The current evaluation findings are considered to be a minimally reliable reflection of Mr. Ferrari's functional status. He engaged in bizarre, atypical behavior on very simple tests of attention and concentration, which was inconsistent with his otherwise relatively competent presentation. He was evasive and dissimulated regarding his substance abuse history. *There was a very clear disgenuine component to his presentation, and malingering is a possibility in this case.* He presented with complaints of back pain he minimized and denied a history of substance abuse. However, records indicate several emergency room visits for stimulant abuse and stimulant psychosis. A polysubstance abuse disorder is likely. He exhibited relatively slick manipulative social skills. His descriptions of social relations tended to be suggestive of a tendency towards superficial social manipulation. Antisocial personality disorder is possible in this case.
>
> *Barring medical limitations, Mr. Ferrari should be able to maintain competitive employment. He should be able to understand, remember and carry out relatively detailed instructions. He should be able to maintain attention to perform simple repetitive tasks for two house blocks of time. He should be able to tolerate normal work-related stress, and sustain effort and persist at a normal pace over the course of a routine 40-hour workweek. He is socially manipulative and would require supervision, but he should be able to relate to others regarding simple work-related matters. He would be considered capable to manage his own personal financial affairs.*

(Tr. 382).

Based on the entirety of this portion of Dr. Greenway's report, this Court does not find Dr. Greenway's report supports the claimant's argument that he is limited to only unskilled work and the ALJ improperly relied on the VE's testimony at Step 5 of the sequential evaluation.

After review of the record and the claimant's Objections, this Court concludes, as did the magistrate judge, the ALJ properly incorporated into her hypotheticals to the VE all of the claimant's impairments that she believed were supported by the evidence in the record. Therefore, this Court concludes it was not error to rely on the testimony of the VE, who testified there are jobs in significant numbers in both the national and local economies that the claimant can perform. Consequently, the claimant's objection on this point is OVERRULED.

**IV.     Conclusion**

For the foregoing reasons,

IT IS HEREBY ORDERED that the objections of the claimant are OVERRULED. Therefore, IT IS ORDERED, ADJUDGED, AND DECREED that the Commissioner's decision in this social security matter, denying benefits, is AFFIRMED, and the case is DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 21st day of September, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE